UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVIDSON SANON,
Petitioner,

v.

MICHAEL NESSINGER, *Superintendent, Wyatt Detention Facility*; MARKWAYNE MULLIN, *Secretary of the Department of Homeland Security*; DAVID VENTURELLA,[1] *Acting Director of the U.S. Immigration and Customs Enforcement*; TODD BLANCHE, *Attorney General of the United States*; and DAVID T. WESLING,[2] *Acting Boston Field Office Director of U.S. Immigration and Customs Enforcement*,
Respondents.

No. 26-cv-563-JJM-AEM

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Davidson Sanon has filed a Habeas Petition under 28 U.S.C. § 2241, arguing that his arrest and continued detention by Immigration and Customs Enforcement ("ICE") is unlawful, and that he must be released and given a bond hearing before an immigration judge ("IJ") pursuant to 8 U.S.C. § 1226(a). ECF No. 1. The Government

[1] Pursuant to Fed. R. Civ. P. 25(d), David Venturella has been substituted for Todd Lyons as the Acting Director of U.S. Immigration and Customs Enforcement.

[2] Pursuant to Fed. R. Civ. P. 25(d), David T. Wesling has been substituted for Patricia Hyde as the Acting Boston Field Office Director of U.S. Immigration and Customs Enforcement.

asserts that Mr. Sanon is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) as a noncitizen parolee whose parole into the United States has expired under 8 U.S.C. § 1182(d)(5)(A). ECF No. 9.

For the reasons stated below, the Court GRANTS Mr. Sanon's Petition and ORDERS the Government to immediately release him from ICE custody and provide him with a bond hearing under Section 1226(a).

## I. BACKGROUND

### A. Statutory and Regulatory Framework

The Government's power to detain a noncitizen must be grounded in a specific provision of the Immigration and Nationality Act ("INA"). *See, e.g.*, *Gonzalez Lopez v. Wesling*, 828 F. Supp. 3d 284, 288 (D.R.I. 2026). Two distinct statutory provisions—Section 1225(b)(2)(A) and Section 1226(a)—generally authorize the Department of Homeland Security ("DHS") to detain noncitizens before they have been ordered removed from the United States.

#### 1. Detention Under Section 1225(b)(2)(A)

Section 1225(b)(2) of the INA mandates the detention of certain noncitizens during the pendency of their removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (citing 8 U.S.C. § 1225(b)(2)). This provision does not guarantee any right to a bond hearing before an IJ. *Id.*

"[A] noncitizen must be an 'applicant for admission' for [Section] 1225(b)(2)(A) to apply." *Guerrero Orellana v. Moniz*, Nos. 25-2152, 26-1094, --- F.4th ----, 2026 WL 2352042, at *5 (1st Cir. Aug. 13, 2026) (citing 8 U.S.C. § 1225(b)(2)(A)). An "applicant

for admission" is defined as a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)).

Section 1225(b)(2)(A) can also only be satisfied if "an examining immigration officer determines that a noncitizen 'seeking admission' is not clearly 'entitled to be admitted.'" *Guerrero Orellana*, 2026 WL 2352042, at *7. Though the phrase "seeking admission" is not statutorily defined, the First Circuit has interpreted it to mean "trying to gain lawful entry into the United States after inspection and authorization by an immigration officer." *Id.* at 6. Thus, "noncitizens . . . who are present in the United States without admission are not subject to [Section] 1225(b)(2)(A)'s mandatory detention provision, but rather, are governed by [Section] 1226." *Id.* at 11.

For those noncitizens Section 1225(b)(2)(A) does apply to, there is a narrow exception by which they "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 C.F.R §§ 212.5(b), 235.3.

### 2. Detention Under Section 1226(a)

Section 1226(a) generally applies to "certain [noncitizens] already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. at 289 (citing 8 U.S.C. § 1226(a)). Unlike Section 1225(b)(2)(A), Section 1226(a) "serves as a source of *discretionary* detention authority and allows for the release, on bond or conditional parole, of noncitizens who are subject to this section." *Guerrero Orellana*, 2026 WL 2352042, at *1 (emphasis added).

An ICE officer "makes the initial determination for noncitizens subject to detention under section 1226(a)." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021). If the officer opts for continued detention, then the noncitizen has a Fifth Amendment Due Process right to seek review of that decision at a bond hearing (also known as a "custody redetermination hearing") before an IJ. *Id.* at 41. At that hearing, the Government bears the burden of proving either: (1) "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or (2) "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.*

**B. Factual and Procedural History**

Mr. Sanon is a citizen of Haiti. ECF No. 1 at 1. On December 17, 2023, he applied for admission into the United States at a port of entry near Hidalgo, Texas. ECF No. 9-2 at 1. A Customs and Border Protection ("CBP") officer found Mr. Sanon to be subject to removal under 8 U.S.C. § 1182(a)(7)(A)(i)(I).[3] *Id.* at 4. The officer thereafter issued him a Notice to Appear ("NTA") and placed him in removal proceedings. *Id.* at 1.

Even so, DHS issued Mr. Sanon a Form I-94[4] and admitted him into the United States on parole. ECF No. 9 at 1; *see also* ECF No. 9-1 at 1 (displaying Mr. Sanon's Form I-94). On the form, Mr. Sanon's "Arrival/Issued Date" is listed as December 17, 2023, and his "Admit Until Date" is listed as December 17, 2025. ECF No. 9-1 at 1.

---

[3] This provision of the INA renders a noncitizen removable if they are "not in possession of a valid entry document." *Gonzalez-Arevalo v. Garland*, 112 F.4th 1, 6 (1st Cir. 2024) (citing 8 U.S.C. § 1182(a)(7)(A)(i)(I)).

[4] This form is also known as "an Arrival/Departure Form." *Corado-Arriaza v. Lynch*, 844 F.3d 74, 76 (1st Cir. 2016).

Mr. Sanon now resides in Lynn, Massachusetts. ECF No. 1 at 1. On or about June 20, 2026, he was arrested and charged with domestic assault and battery of a household member. ECF No. 1 at 4; *see also* ECF No. 8-2 at 1-3 (displaying police report). Shortly thereafter, on August 4, 2026, ICE officers took Mr. Sanon into custody as he was leaving his residence. ECF No. 1 at 4. He is currently being held at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. *Id.* at 2.

Mr. Sanon filed the present petition on August 14, 2026. *Id.* The Government has responded and argues that the petition should be denied. ECF No. 9 at 1.

## II. DISCUSSION

The key dispute in this case is over the precise INA provision that governs Mr. Sanon's detention. Mr. Sanon asserts that he is subject to Section 1226(a) and is therefore entitled to a bond hearing as well as immediate release from ICE custody. ECF No. 1 at 6-7. The Government counters, arguing that Section 1225(b)(2)(A) governs because he was admitted into the United States on "temporary parole" and that parole has since expired. ECF No. 9 at 2.

Mr. Sanon's status as a parolee—whether expired or not—is undoubtedly relevant to this analysis. As alluded to earlier, both of the statutory provisions at issue provide for release on parole: Section 1225(b)(2)(A) authorizes temporary parole "for urgent humanitarian reasons or significant public benefit," *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)), while Section 1226(a) "allows for the release of . . . noncitizens on . . . conditional parole[.]" *Guerrero Orellana*, 2026 WL 2352042, at *1 (citing 8 U.S.C. § 1226(a)).

There are notable distinctions between these two types of parole. *See De Andrade v. Moniz*, 802 F. Supp. 3d 325, 330 (D. Mass. 2025) ("Notably, conditional parole under § 1226(a) is distinct from 'humanitarian' or 'significant public benefit' parole into the United States under § 1182(d)(5)(A)."). Conditional parole under Section 1226(a) "'releases a non-citizen already in the country from domestic detention' pending the normal removal process." *Id.* at 330-31 (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025)). A common form of conditional parole is an Order of Release on Recognizance. *See Matter of Cabrera-Fernandez*, 28 I&N Dec. 747, 747 (BIA 2023) ("The respondents were . . . released on their own recognizance pursuant to DHS' conditional parole authority under . . . 8 U.S.C. § 1226(a)(2)(B)."); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that [DHS] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a).").

By contrast, humanitarian or significant public benefit parole is granted "on a case-by-case basis" and is "not [to] be regarded as an admission" of the noncitizen. 8 U.S.C. § 1182(d)(5)(A). The statute also provides that, upon revocation or expiration of this type of parole, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* In other words, this type of parole "employs a legal fiction whereby [noncitizens] are physically permitted to enter the country but are nonetheless

'treated,' for legal purposes, 'as if stopped at the border.'" *Martinez*, 792 F. Supp. 3d at 216 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)).

There is no dispute that Mr. Sanon was subject to parole under Section 1182(d)(5)(A). Upon his arrival to the United States, DHS issued Mr. Sanon a Form I-94, *see* ECF No. 9-1 at 1, and that form applies to, among others, noncitizens "paroled into the United States under [Section 1182(d)(5)] of the [INA]." 8 C.F.R. § 264.1(a). Nor is there any dispute that his parole expired exactly two years after it was issued on December 17, 2025. ECF No. 9-1 at 1. Where the parties do disagree is over whether Mr. Sanon—who has resided in the United States for nearly three years—is still "seeking admission" such that he is subject to Section 1225(b)(2)(A)'s mandatory detention provision. ECF No. 9 at 1-2; ECF No. 10 at 2-3.

The First Circuit has ruled that, for Section 1225(b)(2)(A) to apply, a noncitizen must be *both* "an applicant for admission" and also "seeking admission." *Guerro Orellana*, 2026 WL 2352042, at *5 ("[A] noncitizen must be an 'applicant for admission' for § 1225(b)(2)(A) to apply."); *id.* at 1 (recognizing that "the mandatory detention provision at § 1225(b)(2)(A)" necessarily requires the noncitizen to be "'seeking admission'"). The two phrases do not mean the same thing. *Id.* at 10-11 (rejecting the Government's interpretation of "applicant for admission" and "seeking admission" as "meaning essentially the same thing").

There is no doubt that the first element of Section 1225(b)(2)(A) is met. Recall that an "applicant for admission" is a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Jennings*, 583 U.S. at 287

(quoting 8 U.S.C. § 1225(a)(1)). Because Mr. Sanon is present in the United States and his temporary parole is "not [to] be regarded as an admission," 8 U.S.C. § 1182(d)(5)(A), Mr. Sanon is an "applicant for admission." This part of the analysis is backward-looking. The law reverts Mr. Sanon to the state he was in back in 2023, as someone "stopped at the border." *Martinez*, 792 F. Supp. 3d at 216; *Thuraissigiam*, 591 U.S. at 139.

But is he also necessarily "seeking admission" in 2026? This part of the analysis looks to the present: "Notably, the present participle 'seeking' implicates an active, present tense action." *Guerro Orellana*, 2026 WL 2352042, at *6 n.10. And under the First Circuit's reading of "seeking admission," this term "refer[s] only to those trying to gain lawful entry into the United States at a border or port of entry." *Id.* at 15 n.28 (cleaned up); *see also id.* at 19 n.31 (Dunlap, J., dissenting) (observing that, under the majority's interpretation of "seeking admission," that term "refer[s] only to 'those trying to gain lawful entry into the United States after inspection and authorization by an immigration officer' at the border or a port of entry").

This interpretation of "seeking admission" leads the Court to conclude that Mr. Sanon cannot be subject to mandatory detention under Section 1225(b)(2)(A). Although he is an applicant for admission, Mr. Sanon clearly is not presently at the border or a port of entry being inspected by an immigration officer as a noncitizen trying to gain lawful entry into the United States. He has already entered the United States and has resided here for nearly three years. *See Guerro Orellana*, 2026 WL 2352042, at *6 n.9 (observing that, though the First Circuit "has stopped short of

announcing a 'definitive definition of "entry,"' [it] ha[s] looked approvingly at definitions requiring 'a crossing into the territorial limits of the United States,' and ha[s] acknowledged that entry requires that the noncitizen 'cross the United States border free from official restraint'" (quoting *Dimova v. Holder*, 783 F.3d 30, 38-40 (1st Cir. 2015))); *cf. Mullin v. Al Otro Lado*, 609 U.S. ----, 146 S. Ct. 2079, 2090 (2026) (considering the ordinary meaning of "arrives in the United States," and concluding that it "clear[ly]" means that "[a] person arrives in a geographic location only when he enters it").

As one judge in this circuit put it, "[b]y being paroled into the interior of the country, Mr. [Sanon] was transformed from an individual 'seeking admission' into an individual residing in this country who is no longer 'arriving.'" *Wu v. Stamper*, No. 1:26-cv-00090-SDN, 2026 WL 608286, at *4 (D. Me. Mar. 4, 2026) (Neumann, J.) (collecting cases standing for this proposition). Another judge within this circuit has explained that petitioners, like Mr. Sanon, are "not seeking 'initial entry' into the United States. [They] ha[ve] lived in the United States on parole [for over two years] and [are] in the midst of removal proceedings." *Martinez Angulo v. Moniz*, No. 26-cv-10302-AK, 2026 WL 905109, at *2 (D. Mass. Apr. 2, 2026) (Kelley, J.).

Moreover, as the Supreme Court has confirmed, there is "nothing in [the] text [of Section 1182(d)(5)(A)] that affirmatively authorizes detention, much less indefinite detention." *Clark v. Martinez*, 543 U.S. 371, 385 (2005). Rather, the text of that statute provides that, upon revocation or termination of a noncitizen's parole, "'the [noncitizen] shall . . . be returned to the custody from which he was paroled and

thereafter *his case shall continue to be dealt with in the same manner as that of any other applicant for admission*.'" *Id.* at 385-86 (emphasis in original) (quoting 8 U.S.C. § 1182(d)(5)(A)). For an "applicant for admission" to be detained under Section 1225(b)(2)(A), he must also be "seeking admission." 8 U.S.C. § 1225(b)(2)(A). However, Mr. Sanon is decidedly not "seeking admission" under Section 1225(b)(2)(A), and that provision cannot justify his detention.

The Court therefore finds Mr. Sanon to be detained under Section 1226(a), which governs the detention of "noncitizens . . . who are present in the United States without admission[.]" *Guerrero Orellana*, 2026 WL 2352042, at *11. He is therefore entitled to a bond hearing before an IJ. *See Hernandez-Lara*, 10 F.4th at 41.

As for Mr. Sanon's request that he be immediately released from ICE custody, the Government makes a last-ditch effort to prevent this outcome. According to the Government, "[e]ven if the Court were to conclude 8 U.S.C. § 1226 applies (and it does not), [Mr. Sanon] would be constitutionally subject to discretionary detention and receive adequate due process." ECF No. 9 at 8. The Government argues that "[u]nder § 1226, too, [Mr. Sanon's] detention would therefore be authorized by statute and regulation, with no basis for the Court to order release." *Id.*

But the Government cannot have it both ways. Recall that it is *an ICE officer* who "makes the initial detention determination for noncitizens subject to detention under section 1226(a)." *Hernandez-Lara*, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(c)(8)). Here, no ICE officer has made an initial detention determination to subject Mr. Sanon to detention under Section 1226(a). Instead, ICE has completely eschewed reliance

on this provision, telling the Court that Section 1226(a) "does not" apply to Mr. Sanon because "ICE submits that the detention authority instead resides under 8 U.S.C. § 1225." ECF No. 9 at 8.

As a matter of law, it is *the Court*—not ICE—that finds Mr. Sanon's detention to be governed by Section 1226(a). Because the Government did not have the legal authority to detain Mr. Sanon under the authority that it claims (Section 1225(b)(2)(A)), the Court also finds his immediate release to be appropriate. *See Guerrero Orellana*, 2026 WL 2352042, at *1 (holding that a district court, which found a noncitizen's detention to be governed by Section 1226(a) and not Section 1225(b)(2)(A), "was right to order the government to release [the noncitizen] or provide him with a bond hearing"); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").[5]

[5] The Government also argues that the Court should deny Mr. Sanon's Petition because he "failed to exhaust all available administrative remedies" and "has yet to even request a bond hearing." ECF No. 9 at 10. This position is not well taken. The Board of Immigration Appeals ("BIA"), which oversees the immigration courts, has concluded that noncitizens whose Section 1182(d)(5)(A) parole has been terminated must be detained under Section 1225(b)(2)(A) until removal proceedings have concluded. *See Matter of Q. Li*, 29 I&N Dec. 66, 70-71 (BIA 2025). Thus, under BIA precedent, individuals meeting these criteria are "ineligible for bond." *Id.* at 71. Because requiring Mr. Sanon to ask an IJ for bond would be an entirely futile endeavor, the Court will not require exhaustion in this case. *See Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 79 (1st Cir. 1997) (recognizing "the inappropriateness of requiring exhaustion when further agency proceedings would be futile").

## III. CONCLUSION

The Court therefore GRANTS Mr. Sanon's Habeas Petition. ECF No. 1. The Government is hereby ORDERED to release Davidson Sanon immediately. Should it be necessary, the Government is permitted to transfer Mr. Sanon to ICE's Boston Field Office in Burlington, Massachusetts for the limited purpose of processing his release and allowing for any return of property. However, effectuating this transfer shall not in any way impede Mr. Sonan's immediate release.

The Government is also ORDERED to provide Davidson Sanon with a bond hearing before an IJ under 8 U.S.C. § 1226(a) within ten (10) days of the date of this Order. Should it choose to pursue Mr. Sanon's continued detention, the Government must show why less restrictive alternatives to detention would be inadequate for it to achieve its goals. *See Higiro v. Nessinger*, No. 26-cv-105-JJM AEM, 2026 WL 710297, at *8 (D.R.I. Mar. 13, 2026) (finding that due process requires IJs to consider alternatives to detention at bond hearings to ensure that detention is not arbitrarily imposed and bears a reasonable relation to the Government's interests). The IJ shall consider any alternatives to detention *before* making a finding as to flight risk or dangerousness. *See Brito v. Garland*, 22 F.4th 240, 254 (1st Cir. 2021) (noting that to require otherwise would be "to put the cart before the horse").

Finally, the Court ORDERS the Government to file a status report within five (5) days of Mr. Sanon's bond hearing, stating whether he has been granted bond. If Mr. Sanon's request for bond is denied, the Government shall state the reason for that denial and whether Mr. Sanon has been re-detained by ICE.

IT IS SO ORDERED.

***/s/ John J. McConnell, Jr.***

_______________________________

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

August 21, 2026